Case No. 15-5534, Jeffrey L. Smith v. Rock-Tenn Services Inc. Oral argument not to exceed 15 minutes per side. Randall S. Thompson for the appellant. You may proceed. Morning. Morning. May it please the court. I've reserved three minutes for rebuttal time, your honors. All right. This is a sexual harassment case, and I think at the crux of this case what this is about is whether a handful, and in this case three, incidents of isolated male-on-male horseplay meets Title VII's definition of an abusive work environment. The jury decided it wasn't horseplay, right? Correct. Okay. So when you categorize it as male-on-male horseplay, there was physical touching. A jury decided that that was more than male-on-male horseplay. Why shouldn't we defer to that finding? Well, I think the court shouldn't have allowed this to go to a jury. I think the court should have dismissed this on summary judgment. There wasn't sufficient evidence for a reasonable jury to find that this satisfied all of the requirements that plaintiff had to prove actionable Title VII. What precedent did the district judge have? Because I looked at everything you cited. I didn't see anything that would have compelled the district judge to grant summary judgment when viewing the facts in the light most favorable to the plaintiff. Well, I think there are several reasons the court should have granted summary judgment. Well, there's plenty of law that says that we can't revisit a decision regarding denial of summary judgment when there was subsequently a trial and a final order, which is now an appeal. Any grounds that the denial of summary judgment was erroneous goes away under these circumstances. There's plenty of case law that says that. But still a de novo review as to whether plaintiff met his burden of proof to make a submissible case. Right. Well, that's a different argument. And this, plaintiff did not. A similar but different argument. You're just saying as a matter of law there wasn't enough evidence to. Correct. I apologize if I misstated. You're just saying the jury shouldn't have gotten it. Yes. Absolutely. Absolutely. We did two of our arguments are evidentiary issues based on what was presented to the jury. But the three, I shouldn't say primary, but initial arguments in our case is that the jury should have never gotten it. Is there any argument about the jury instructions in this case? Yes and no. How yes? In terms of the evidence regarding, there was a limiting instruction given in terms of the evidence presented. I guess I'm questioning about whether the standard that was given to the, whether the jury was properly instructed on what elements it needed to find in order to, the law was accurately stated to the jury as to how, or at least you're not challenging how the law was stated to the jury by the judge. Correct. Are those instructions in the record? I'm not sure. We didn't challenge those. My follow-on question is, are they in the record? Are they something we can look at or not? I will check that and confirm that for you. Thank you. Yes. So there are three reasons why this shouldn't have gone to the jury. One, that the alleged harassment was not because of sex. Two, because objectively the alleged harassment was not severe or pervasive enough to create an abusive work environment. This is the case where he was hunching him in the back and all of that? This is the case where we have three incidents. We have one. The third one. The third one. I don't know what hunching means, but I can sort of guess, I guess. Well, under the plaintiff's testimony on this, he alleges that. . . Like it's a sexual approach kind of thing. Well, he hasn't argued that this was sexual in nature. What's a hunching? He indicated that he came up behind him and pressed up against him. There was conflicting testimony by the plaintiff and the alleged harasser, Mr. Leonard, in this case as to what came up. . . So a jury couldn't find that that's sexual in nature? Plaintiff, no. It could not? Not sufficient to establish an objectively abusive work environment. Oh, but that's not my question. If it's sexual in nature, then why do we have to worry about whether it's sexual in nature or not? Now, whether it's sufficient or whether there was whatever the other standards are sure seems sexual. No, this was horseplay. Even under plaintiff's allegations, this was not sexual in nature. The fact that the two of you are having this discussion, doesn't that mean it should go to the jury? Isn't that a jury call at the end of the day where the plaintiff says his pelvic area rubbed up against me? It was the third incident, which of course we can consider since you can consider them cumulative. And in the third incident, even he at some point in his deposition or somewhere admitted that he, meaning Mr. Leonard, his private parts rubbed up against the plaintiff. Yes, under our theory, yes. I mean, what I'm saying, not yes to your question, I'm saying you have to assume the facts in a light, most favorable plaintiff. I agree with that. Our point is objectively, even if you take what plaintiff says is true, that and those two other incidents together, cumulatively, do not objectively establish an abusive work environment that a jury would find. He slapped him in the rear end, then he cupped him in the rear end, and then he put his pelvic area in the rear end. Yes. And you're saying objectively, I mean, viewing it in the light most favorable to the plaintiff, I think if I went out and asked people on the street, they'd say, yeah, that sounds pretty sexual to me, and however many jurors in this case found it pretty sexual. I think under the Sixth Circuit case law, under the Supreme Court case law, again, you have to take it, first of all, in the context, as Onkale says, by the Supreme Court. You have to take that into account. And this is male-on-male horseplay, which is not protected by Title VII. Do you have arguments in addition to the it's not sexual? Yes. For my purposes, I'd like to hear those. Okay. I don't want to speak for my colleagues, but, I mean, I think we're ready for your additional arguments. Understood. In addition, is plaintiff's burden of proof on a claim of non-supervisor harassment to prove that the company failed to take prompt and effective action in this case? That's the one I'm curious about. Yes. And so it's plaintiff's burden to establish that there was manifest indifference to his rights. Do we just look at this one decision-maker, or do we look at the group of people who are superior as a whole? I think you can look at all. WHOLE as a whole. You can certainly look at all the facts. I'm not talking about all the facts. I'm talking about the perspective. There's the argument that the person who only gave a short suspension and waited a week to do it didn't know about all these other things. Is that correct? The ultimate decision-maker, Mr. McIntosh, was unaware. McIntosh? McIntosh. McIntosh. David McIntosh. Only knew about this one incident, and so, therefore, didn't come down that hard. Right? Well, and his testimony also was that that prior warning wouldn't have made any difference because the investigation that they took, which included talking to eight different witnesses of all the people that worked around plaintiffs in the alleged harassment, it's undisputed that all of them didn't see what happened, none of them complained. You're not answering my question. Do we just look at the information Mr. McIntosh had, or do we look at the information that he and other people in the HR system would have known? No, you can look at that. You look at all of that. So if you look at all of it, they knew that there were three of these incidents, and that there were other incidents with respect to other people. We had. We attribute that. Do you agree that that's properly attributable to the company for purposes of whether there was whatever the standard is? Timely action. Say it again. What's the standard? Well, I'm just summarizing. Timely action. Yeah, timely action. We're not suggesting that they can't take that into account. What they understood. So they can. Yes, and at the time. Well, if they can, and the jury instructions reflected that. We don't have the jury instructions before us. At least I haven't seen them. Why don't we defer to the jury determination? I don't think a reasonable jury could have taken that into account and found that the company exhibited manifest indifference to his rights. Plaintiff has the burden of proof to present reasonable evidence, sufficient evidence, that a reasonable jury could come to that conclusion. Otherwise, it never goes to the jury. This happens on June 4th. He doesn't get suspended until June 17th. In the interim, they have to work together. They get sent to some hearing test together, and the company is aware of a few previous incidents involving other people and Mr. Leonard. Correct? All of this is true. The company takes no action when he reports it on the 4th. They take no action on Monday the 7th. They say, we're going to wait for our supervisor to get back. They put them back together. They send them to the hearing test together. How is that prompt or medial action when you know this guy has been doing this stuff to other people? Well, first of all, at the time, they don't know that he's been doing this stuff. This is an allegation at the time. What do you mean? No, as to this person, it's an allegation. But they know he has a history, right? They know there was one prior act. They know what? One prior act. I thought there were multiple prior acts. At the time of this, there was a write-up in March of 2011 with an incident between Mr. Leonard, the alleged harasser, and Kendrick Roper, one incident. And is that the incident where the company said, if you do this again, you're going to get fired? Yes, they put him on the warning after that incident. Okay, so they know that they're going to fire him if he does it again. They get an allegation that he did it again, and they do nothing for 13 days effectively, correct? It's not that they didn't do nothing. Did they still continue to work together? Yes. All right, so what did they do? What disciplinary action did they take in that 13 days? No disciplinary action. There was no corroboration. So they did nothing? No. Plaintiff got sent home that day. They continued to work together, yes. Okay, so why couldn't a jury view that and say they didn't take prompt corrective action? Well, there's no presumption that a company has to assume that that allegation is true and somehow take disciplinary action pending the investigation. That's not what the law requires. Look, I'm as big a fan of a presumption of innocence as anyone, but when you have a previous act where the company says, we're going to fire you if you do this again, and someone comes in and says, lo and behold, they did it again, at the very least, couldn't the company separate the two? Couldn't the company have them work on different days? Couldn't the company say, look, we're going to pay you. We're going to give you leave without pay. We do it in other jobs all the time. We're going to give you leave without pay while we investigate. I understand everything. Look, if you're giving them leave without pay, it's a vacation for him, but at least you're taking prompt corrective action to protect the person who's making the allegation that's consistent with the prior one. I don't know why a jury can't consider that. You're saying a judge should have taken that out of a jury's hands. Yes, and there is no requirement in the law that the company take that action. Just as there's no, even if the company had found something. What does the law require? Take prompt and effective remedial action to address the situation, to reasonably prevent future occurrence. So reasonable is, some things that are reasonable to some people might not be reasonable to others. It sounds like you think what they did was reasonable, and Judge Thapar thinks that a juror might think that something else is reasonable, but the law requires reasonable is what you just told me. I don't have the jury instructions. If the law says reasonable, why can't a jury say, well, this wasn't reasonable, even though you say it was reasonable. And let me state more fully that the law requires that the plaintiff demonstrate that the company exhibited manifest indifference to the case. I don't think they did. That's the word I was trying to come up with. The standard, I think, is manifest indifference. But manifest indifference is. Or unreasonableness in light of the facts known or should have been known to the employers. It's manifest indifference or unreasonableness in light of the facts known or should have been known. I don't have the instructions. I take your word for it. That sounds right. You're not disagreeing with that, right? But those words are not self-defining. Somebody might say this was both of those things. Why do we, I mean, I'm sympathetic to employers who have employees who do all kinds of awful stuff, and it's hard to deal with all of that. I mean, it is hard. That's why we have these high standards. But they sound like standards that you would give to a jury and allow people to argue the same kinds of things you're arguing. Well, at a certain level, yes, if they reach that level, just as with all the elements of the claim are. But we're just saying, well, we're going to say that if a jury finds this to be manifest indifferent or unreasonable, we're just going to disagree with them and say it's not that indifferent or unreasonable. That's what I'm worried about. It seems to me you need to have something a little bit sharper to hang your hat on. What I'm saying is, in these cases, it's not a right or wrong. There's not a one solution situation. But we're saying what the company did did not meet that level of manifest indifference. And I just want to make one point in terms of them working together, too. The district court also found, as a matter of law, that it was unreasonable for plaintiff to quit, in effect finding that the fact that they were continuing to work together was unreasonable for him not to accept that. So, therefore, it was not unreasonable. And the plaintiff never contested that. And the plaintiff did not appeal that. So, as a matter of law, it was not unreasonable for them to continue to work together. And it's undisputed that they told different stories than that. And really what I think- If you want to keep going, you're going to have to take time from your rebuttal time. Your red light's been on a long time. Can I ask one question that doesn't run against his time very quickly, just for my own- I didn't quite understand this reduction from 307 to 300. Can you explain to me the- Sure. There were two claims brought. One was under Title VII. The other was brought under Tennessee statutory law, Tennessee Human Relations Act. And there's a one-year statute of limitations under the state statute that doesn't exist under Title VII. And so- So the state thing went away. And you could get 307 under the state and 300 under Title VII? What was the reason for that? There's a- The statutory limitations under Title VII are 300,000. And so- Nobody can recover more than 300,000 under Title VII? Correct. Per person or per incident or per what? Well, based on the number of employees, but it's for the claim. It's in total. Thank you. That answers my question. Okay. Thank you. Thank you. Good morning. Good morning. Heather Collins for the plaintiff, Mr. Smith. Your Honor, we are here today because the defendants have asked this panel to overturn a jury verdict. They did not, as you recognize, they did not contest the jury instructions in this case. Are they in the record? They are not in the written record. And they were not submitted- What other kind of record could they be in? Well, they were not in the- Are they in the transcript? They were not in the transcript. You're saying we don't have the jury instructions before us because they were not contested and there's no appeal regarding them? That is exactly what I'm saying. That's what I was asking. That is exactly what I'm saying. The only jury instruction that I believe was put into the appellate record was one jury instruction that had to do with back pay. And that had to do with their argument about the damages. So the jury instructions are off the table as to whether or not the jury properly heard what the legal standard is. So then we go back to what the issues are that the defendant raised. The defendant raised three issues. They raised the issue, as you recognize, whether the harassment was because of sex. And on call, obviously, is the landmark case in that. They pointed out three different avenues that someone can prove those sorts of cases. I've got to take a breath. It's always nerve-wracking being here. Can I ask you a question? Yes. I'm going to skip some of that. Okay. On prompt corrective action. Yes. The judge found it was unreasonable for your client to quit. Correct? Yes. Why isn't the respondent right that if the judge found it was unreasonable to quit, how can we find that the company was unreasonable to keep them working together? He didn't quit until August. All of these actions took place in June. And so what formed a part of the hostile work environment. But when they suspended him June 17th, how long did they suspend him for? When they suspended the harasser? Mr. Leonard. Two days. So they were working together because he doesn't get fired until his deposition. Correct. They continued to work together. They were sent for hearing tests. There was testimony from my client that they were on the way home. That's much more excessive than 13 days. So what the judge essentially said is, look, it was unreasonable for your client to quit after three months of working together. Correct. Because of what happened to him, he was out on medical leave. Finally, after them working together for that week where they're sent on the hearing test and they're seeing each other constantly. And keep in mind that his mindset at this time was after the third incident where the harasser came up behind him. And I know that they tried to minimize this as he just came up behind him, hunching him. It was an inherently sexual act. This is another man coming up behind him. We get that. Look, we get that. But answer my question. I'm just not sure I understand. So the judge says it's unreasonable for your guy to quit even though he has to work with this guy. Yet he says it's okay for a jury to find that it's unreasonable what the company did. It seems inconsistent. Sure. It said that it was unreasonable three months down the road and it did not meet the constructive discharge standard, which even though that's not part of the argument in this case, constructive discharge, as I'm sure you all know, is a much higher burden to show as to whether or not he was constructively discharged in August when he said, I just can't come back to work. I can't do this. And so at that point, that's where it cut off the damages, and that goes to part of their argument that they made under Betz and whether he could talk about him being out of work and all that, which is a completely separate issue. He said it was unreasonable for him to quit. That went to the constructive discharge issue. But that issue is not before us on appeal. No. So that's out of the case. That is out of the case. The judge's determination there only addressed the issue of constructive discharge. Correct. Isn't that the short version of what you're saying? Correct. That is not the issue. The issues in this case are the three elements of whether or not he was subjected to a hostile work environment and whether or not. But we get all that. And what I'm saying is I understand that goes to constructive discharge. It's a different point. I'm just saying there's a logical inconsistency with the judge saying. All I'm saying is there's a lot. I don't know that it has any legal teeth, but I understand. The judge said it's unreasonable for him to quit. But then he's saying it's unreasonable for the company to let them work together. To me that seems inconsistent. Or he's supporting the jury's verdict saying it's unreasonable for the company to let them work together. You see what I'm talking about as to how there's a logical inconsistency? Maybe the judge was wrong. I'm not saying the judge was right. I'm just saying explain to me how that works together. Sure. There does appear to be some inconsistency, but it has been recognized in other cases where a client or a plaintiff can prove a hostile work environment because that deals with what they dealt with in the workplace, not what happened down the road as to whether or not they made the decision to flee the workplace, which is a completely different thing. So those are two completely different arguments. And you're not required to have ---- Just so I understand it, what you're saying is you could have a hostile work environment, and down the road it's unreasonable to leave because of whatever actions have been taken or whatever happened, but that doesn't affect whether they took prompt corrective action. Exactly, exactly, exactly. And I would just like to address a couple of issues that you had that were raised with regards to whether or not they took prompt and appropriate corrective action. This circuit in Hawkins has recognized that an employer's responsibility is heightened when they're dealing with a known sexual harasser. What about their argument that there's one previous incident that they were aware of? Is that accurate? Yes. There's only one? Because for some reason I thought there were multiple. Because in the trial when I was reading various portions ---- Well, one that was properly documented. And obviously that's a big difference. There was one that was properly documented. That was the Leonard incident. And I have ---- I thought Leonard was the perpetrator. No, no, no, you're right. Leonard was the perpetrator, and it was ---- That's okay. There was one properly documented, then what? Right. That was properly documented with respect to someone other than your client? Correct. Kendrick Groper was the one who was harassed the first time. And that was properly documented. They noted on that documentation, it said horseplay slash sexual harassment. If this happens again, you will be subject to termination. That was in March of 2011. Then my client was harassed once before that, twice after that. The first two times he followed policy. And he did what, you know, frankly a lot of men from middle Tennessee would do. He told the harasser, don't touch me again or I'm going to hurt you. And that's what, you know ---- He had two instances prior to the hunting. Yes, those two incidents. There was one allegedly involving Stephen Hackney and also an employee named Nick. And Groper had also testified he had seen Leonard touch Gil. So it sounds as though Clinton Gil received a pinch in the side. So it does sound like there were several prior incidents.  Right. I want to ask about, I understand that, but I want to ask about the prior incidents. I'm trying to think what a reasonable employer would do. If he's been harassing other people but this is the first time he's been harassing this person, you might not immediately separate them as much as if you knew that this is the third time that he'd harassed this particular person. That might heighten your need to separate them immediately and move quickly. And I took from my reading of the briefs that there was this argument that they didn't really know about, that the actual decision maker didn't know about the previous two instances with respect to your client. And that does not absolve them from liability. I understand, but it changes the weight of it at least. But I'm wondering whether it does or not because that depends on the idea that McIntosh didn't know of the previous ones but other people in the hierarchy did know of the previous ones. Or at least he said, he reported to them that this had happened to him before. And this is key. That is a very good point and it's key. Because those other managers all thought that he should have been terminated. Of the previous two with respect to your client. Of the other two acts against my client and the acts against Leonard. But I thought, now I misunderstood your brief. So I thought your client didn't report the first two because he followed company policy. So the first time he told them not to do it, the second time he choked him, and then, right? Third time he choked him. Second time he grabbed him. Okay, I'm sorry. But the first two he didn't report. He didn't report at the time. He reported them when he reported the third one. But he was following policy by telling the- No, I'm not disputing that. So he did report all three at the final incident. He said, this happened, this happened, this happened. And at that time, is all they knew about is the Roper incident or all the incidents, Judge Clay, that we all know about now occurred? Does that make sense? Yes. When they initiated the investigation, he turned in his June 16th note, and that was in Appendix 22 through 23. No, those were Hunter's notes. Smith's notes were Exhibit 15 of the trial court record, Appendix 24 to 25. In Smith's note, he detailed all three incidents. Okay, but my question is, did the company know about all the previous incidents at that time or just the Roper incident? All three. No, no, no, not with regards to him. I'm sorry, my question is poor. With regards to the other individuals that Judge Clay just documented. So Mr. I can't remember their names, but Judge Clay just mentioned them. Yes, and the proof of that is in the one piece of documentation of their so-called investigation. And this is what the jury heard and made their determination on. And that was the trial court Exhibit 14 at Appendix 22 to 23. Those were Hunter's notes from his so-called investigation, and it had a litany of people. But the investigation is after your client reports? Yes. So my question is, before your client reports, is all the company is aware of is the Roper incident? In other words, you said that's the only documented one, properly documented. Is that all the company was aware of? Before my client reported? Yes. Well, that part is vague, because there was... It can't be vague at this point. You either submitted to the jury that they knew, and you have evidence supporting that, or nothing was submitted to the jury, right? We know what the record is at this point. Well, no, there was record evidence where my client testified. When he reported to his supervisor, Davonna Odom, about the harassment, she made a statement to him, oh, this has happened before. Which is Roper. Which is the harasser. No, no, no. I understand. Which is the Roper incident. Judge Clay just asked you about specific other incidents. All I want to know is, do you have any evidence that at the time your client reported, the company was aware of those other incidents? All we have is the list of people in the threadbare notes that Hunter made when he was conducting the investigation. Which is post your client reporting. Correct. We don't know how long they had had those, where they got those from, or what. You didn't discover anything in discovery, nor did you present anything to the jury showing they knew anything other than the Roper incident when your client reported. Is that a fair statement? I believe that's fair. But his actual report referred to two previous statements with respect to him. Correct. Correct. Correct. Again, importantly, unlike a lot of, because I've seen a lot of company policies that say the first time something happens, you must immediately go to HR or your supervisor. These policies are not like that. These policies say you first address it with the harasser and tell him to stop so that his conduct is unwelcome. That's what my client did. He followed their policies. Then on the third time, when it was so bad that the guy came up and hunched on him, and I know they minimize that and say that's not an inherently sexual act. I think most men would disagree having another man come up behind them, grab them, and have their shoulders and pelvic area grinding into them would say that that's an inherently sexual act. My client nearly choked him to death. I was going to say, he appeared to have the ability to defend himself. Well, you know, he did. Not that it's relevant. Yeah, it's a shame, really, because I think that's part of what went into his psyche and made it difficult for him to concentrate on his work because he thought, well, if this guy comes up and does it to me again, you know, he testified he stopped himself. The jury can consider his reaction in determining whether people in the workplace would consider it a sexual act, right? If it wasn't a sexual act, I mean, maybe he doesn't do much, but if he's turning around and choking the guy, he's thinking it's pretty bad, and they can consider that not only subjectively but objectively to say, okay, if we think he's reasonable, this is what a reasonable guy would do if someone did that to him. Right. The harasser was not coming up tickling him, hugging him, you know, and a jury heard that. They evaluated these witnesses. They saw what the harasser had to say and how he said it, and the harasser admitted that he did all these things. And also key to this is that the general manager, McIntosh, who didn't know everything when he made the decision just to do time served, he stated to the jury that this was sexual harassment. The things that happened he considered to be sexual harassment. I see I'm out of time. Yes. Thank you very much. Thank you. Any rebuttal? Just ask the court to affirm the trial court's verdict. Thank you so much. All right. Thank you. Let me just add a few clarifications on the fact issues, which I think we're all concentrating on this morning, in terms of what the company knew and what happened during that investigation. The Kendrick Roper incident was in March of 2011. That was the only incident that the company had ever been aware of, up until June of 2011, when the plaintiff reported the incidents that he says happened to him. At that time, and for the record, just to clarify, the company's policy does not require you go to the harasser. It promotes it. It also says if there's repeated conduct, you should go to management. Plaintiff, who could not even remember when the first two incidents occurred, certainly didn't follow that. But after that was reported, he reported only those three alleged incidents. The company spoke to eight different witnesses. None of those witnesses indicated they had experienced any harassment from Mr. Leonard, and they also testified that they had told management they did not see any alleged improper conduct of Mr. Leonard toward the plaintiff. The evidence of these other incidents only came up later, after this case was done. During the investigation, what the company was aware of, we have one disputed incident and we have two alleged prior incidents. As to whether they took prompt corrective action, the other incidents of which they were unaware obviously cannot be factored in. Correct. And so they brought, and just in terms of making, I want to make sure you understand what happened in this investigation. One of the managers, Mr. Hunter, was on vacation, which was the only reason that delayed. Plaintiff was allowed to go home after the incident occurred. They received the statements from him and spoke to him the next Monday, and that was the next work day because there was a Sunday in between. So they immediately spoke to him, and he ultimately submitted the statements. And obviously it's going to take a little bit of time to talk to that number of witnesses. It would be critical if they just rushed to judgment on that. So at that time, there's no suggestion that wasn't prompt in effect, and again, under the manifest indifference standard, certainly I don't think there's any suggestion that that wasn't appropriate. I think what plaintiff wants and what the law does not require is that unless Mr. Leonard was fired, this has to go forward. And that's not what the law requires. The law is that you have to take reasonable steps and not exhibit manifest indifference. And there's no dispute here that this was contested. And the law doesn't require that you fire just based on an allegation. Can we consider whether they took reasonable steps in light of their investigation that revealed other incidents? Does that make sense? The investigation did not reveal other incidents. No. That's why I want to make sure it's clear. Those other incidents didn't come up until later. That depends on the nature and scope of the investigation as to what it revealed as well. And here's what I'm saying. They spoke to every one of these other individuals that worked around plaintiff. Nobody indicated that they had experienced any alleged improper conduct nor that they had seen plaintiff experience any conduct. What happened during litigation and what people testified to later as to what supposedly had happened is not relevant to the company's investigation or the action that they took. And so I just want to make sure that's clear. These were the only incidents that the company was aware of and would have recently uncovered. You might want to wind up because you're out of time there. Okay. We'll submit on that. Thank you. Thank you very much. The case is submitted.